## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRUCE GAVURNIK, | : | |
|       Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| HOME PROPERTIES, L.P., et al., | : | No. 16–633 |
|       Defendants. | : | |

### MEMORANDUM

**Schiller, J.**                                                                                                                    **January 3, 2017**

      59-year-old Bruce Gavurnik worked as a service technician for Home Properties, L.P. Gavurnik suffered from a variety of vascular and musculoskeletal conditions affecting his ability to walk and stand. He requested accommodations to wear special podiatric shoes and to work only 40 hours per week. Home Properties allowed Gavurnik to wear special shoes, but required Gavurnik to work overtime as needed. Nine months later, Home Properties fired Gavurnik for job misconduct. Gavurnik sued Home Properties for discrimination under the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the Pennsylvania Human Relations Act ("PHRA"). He alleges that he was fired because of his disability and his age, and in retaliation for asking for an accommodation. Home Properties contends that Gavurnik was not disabled because Gavurnik's ability to stand and walk was not substantially limited. Further, Home Properties argues it had legitimate reasons to terminate Gavurnik unrelated to his age or alleged disability. Home Properties has moved for summary judgment. Despite Gavurnik's conditions, the Court concludes that he was not disabled. Additionally, because Home Properties's articulated reasons for firing him were not a pretext for discrimination, the Court will grant Home Properties's motion.

**I.     BACKGROUND**

In 2013, Home Properties, a landlord, hired 59-year-old Gavurnik as a service technician to work at Racquet Club Apartments. (Pl.'s Dep. 25–26; Def.'s Resp. to Interrog. No. 2.) Racquet Club Apartments sits on 50 acres and consists of 570 units. (Martin Dep. 17.) Service technicians worked onsite performing maintenance work, responding to residents' service calls, and removing snow. (Def.'s Statement of Undisputed Facts Ex. 7.) The technicians were required to work overtime and be on call, particularly during the winter when snow removal was a top priority. (*Id.*) Only one of the service technicians working with Gavurnik was older than him. (*Id.* Ex. 30.)

Gavurnik suffered from a series of vascular and musculoskeletal conditions including Raynaud's, rheumatoid arthritis, and bunions, which affected his ability to walk and stand. (Pl.'s Dep. 17.) However, Gavurnik testified that he would walk as far as needed on the job, including for at least an hour (Pl.'s Dep. 19.) In fact, Gavurnik said he could walk "as a normal person can." (Pl.'s Dep. 19.)

Throughout the winter of 2013–14, Racquet Club Apartments received a large amount of snow and service technicians had to work a lot of overtime. (Martin Dep. 34.) Around the end of January 2014, Gavurnik requested two accommodations via doctor's notes for his conditions: podiatric footwear and no mandatory overtime. (Def.'s Statement of Undisputed Facts Exs. 12, 13.) Home Properties accommodated Gavurnik's request to wear the specialized shoes. (Pl.'s Dep. 80.) But Gavurnik claims that his supervisor, Wendy Kind, handed the overtime note back to him, saying "you take this letter back. I didn't see this letter." (Pl.'s Dep. 75.) Gavurnik continued to work throughout the rest of the winter, earning "meets expectations" in every

category on his performance evaluation dated February 26, 2014. (Pl.'s Resp. Def.'s Mot. Summ. J. Ex. K.)

On February 15, 2014, Gavurnik was hospitalized for chest pains and released the same day for exertional fatigue. (Def.'s Statement of Undisputed Facts Ex. 14.) King requested a doctor's note saying that Gavurnik was cleared to return to work, and considered sending him to a panel doctor for a potential workers' compensation claim. (King Dep. 73, 81.) Gavurnik testified that no one at Home Properties made any comment to him about his conditions. (Pl.'s Dep. 121.)

Starting in April 2014, residents and Gavurnik's supervisors filed a series of complaints against him. (Def.'s Statement of Undisputed Facts Exs. 19, 21, 23, 33.) On April 8, 2014, Gavurnik received an Employee Conversation Letter, an intermediate disciplinary step before formal disciplinary action, regarding an incident in which he did not call a cleaner necessary to prepare an apartment for showing. (*Id.* Ex. 19.) In June 2014, Gavurnik complained to his regional supervisor, Rob Delong, that the snow blowers were not functioning, going "over the head" of another of his managers, Steve Martin. (Pl.'s Dep. 94, 99.) On August 8, 2014, Gavurnik received another Employee Conversation Letter for failing to remove trash and supplies from a resident's apartment after a service call. (Def.'s Statement of Undisputed Facts Ex. 21.) On August 20, 2014, Home Properties issued Gavurnik a formal warning notice for arguing with a leasing consultant about the emergency status of a service call that potentially conflicted with a personal appointment. (*Id.* Ex. 23.) Also in August 2014, Gavurnik allegedly failed to properly address a leak in an apartment and retained keys to vacant apartments while he was on vacation, violating company policy. (*Id.* Ex. 33.)

Following these complaints, Home Properties fired Gavurnik on September 2, 2014. (Def.'s Statement of Undisputed Facts Ex. 4.) Later that day, Gavurnik called Home Properties's ethics and compliance hotline, claiming that he was fired because of favoritism and his snow blower complaint to Delong. (*Id.* Ex. 28.) After Gavurnik was fired, Home Properties hired Luke Bray, a 28-year-old groundskeeper already working for Racquet Club Apartments, as the new service technician. (King Dep. 97; Def.'s Statement of Undisputed Facts Ex. 30.)

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the burden of showing that the record reveals no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 247.  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings to set forth specific facts in the record showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). A court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

**III.   DISCUSSION**

Gavurnik has sued Home Properties for discrimination under the ADEA, the ADA, and the PHRA, and for retaliation under the ADEA and the ADA.

**A.   Discrimination**

Discrimination cases under the ADEA and the ADA are subject to the burden shifting framework established in *McDonnell Douglas Corp. v. Green*.[1] 411 U.S. 792 (1973); *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (applying *McDonnell Douglas* to an ADEA claim); *Benko v. Portage Area Sch. Dist.*, 241 F. App'x 842, 845 (3d Cir. 2007) (applying *McDonnell Douglas* to an ADA claim). Under the framework, the initial burden of production is on the plaintiff to show a prima facie case. *McDonnell Douglas*, 411 U.S. at 802. Once the plaintiff makes out a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* Finally, the plaintiff is "afforded a fair opportunity to show that the [defendant's] stated reason for [plaintiff's] rejection was in fact pretext." *Id.* at 804.

**1.   ADEA**

**i.   Prima Facie Case**

In order to establish a prima facie case of age discrimination under the ADEA, the plaintiff must allege four factors: "(1) he is over forty, (2) he is qualified for the position in question, (3) he suffered from an adverse employment decision, and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination." *Ptasznik v. Univ. of Pa.*, 523 F. App'x 156, 159 (3d Cir. 2013). Factors 1, 3, and 4 are not in dispute. Gavurnik was

---

[1] Courts use the same standard to address PHRA claims as they do ADA claims. *Taylor v. Phoenixville Sch. Distr.*, 184 F.3d 296, 306 (3d Cir. 1999).

5

59 years old, was fired,[2] and was replaced by a 28-year-old service technician.[3] Home Properties disputes whether Gavurnik was qualified to be a service technician given that overtime is an essential function of the job.

Home Properties argues that Gavurnik is not qualified to be a service technician because his requested accommodation—no overtime—eliminates an essential function of the job. An individual is "qualified" if, "with or without reasonable accommodation, [the individual] can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Essential functions" refers to the "fundamental job duties of the employment position," not "the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). A function is essential if "the reason the position exists is to perform that function." § 1630.2(n)(2)(i). The relevant regulation looks to evidence of the employer's judgment, written job description, consequences of not performing the function, and current work experience of incumbents to determine if a function is essential. § 1630.2(n)(3). "Whether a function is

---

[2] Termination is an adverse employment decision. *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 510 (3d Cir. 2009). Gavurnik argues Home Properties did not engage in the "interactive process," which also constitutes an adverse employment decision. *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 771 (3d Cir. 2004). Because the parties do not contest that Home Properties fired Gavurnik, the Court need not address the interactive process claim.

[3] Home Properties cites a Fourth Circuit case, *Proud v. Stone*, for the proposition that where the same manager is involved in the hiring and firing of the plaintiff within a relatively short period of time, courts should not draw an inference of age discrimination. 945 F.2d 796, 798 (4th Cir. 1991). The Third Circuit expressly declined to follow *Proud*, instead relying on the Equal Employment Opportunity Commission's argument as *amicus* that those circumstances should merely be evidence a party can point to in convincing a fact-finder. *Waldron v. SL Indus.*, 56 F.3d 491, 496 n.6 (3d Cir. 1995) (noting the potential scenario where an older employee is hired, kept for a short period of time while a younger employee is groomed for the position, and the older employee is later fired solely because of age).

essential is evaluated on a case-by-case basis . . . ." *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000).

The Third Circuit has not decided whether overtime can be an essential job function. But in *Smith v. Burlington County*, the District of New Jersey held that overtime could be an essential function. *Smith v. Burlington Cty.*, Civ. A. No. 02–5581, 2004 U.S. Dist. LEXIS 18032, at *11 (D.N.J. July 27, 2004). The *Smith* Court cited the First, Eight, and Eleventh Circuits, all of which found that overtime could be an essential function, depending on the factual situation of the job. *Id.* (citing *Davis*, 205 F.3d at 1305–06; *Kellogg v. Union Pac. R.R.*, 233 F.3d 1083, 1087–88 (8th Cir. 2000); *Tardie v. Rehab. Hosp.*, 168 F.3d 538, 544 (1st Cir. 1999)).

The Court concludes that mandatory overtime for snow removal is an essential function of service technicians at Home Properties. Overtime is listed in the job description. (Def.'s Statement of Disputed Facts Ex. 7.) Supervisors highlighted the importance of overtime, both in general and in Gavurnik's interview. (King Certification; Martin Dep. 62–63) Gavurnik himself acknowledged that working overtime to remove snow was important because the snow posed a safety risk. (Pl.'s Dep. 31.)

There remains a factual dispute, however, as to whether Gavurnik is "qualified." While it is undisputed that Gavurnik asked for an accommodation to not work overtime, simply because he asked for the accommodation does not mean he is unable to work overtime. Home Properties denied Gavurnik's request around the end of January 2014, and Gavurnik continued to work after that date. The record is silent as to whether Gavurnik had to work overtime after his accommodation was denied. The winter of 2013–14 saw a lot of snow and a lot of overtime hours worked, yet Gavurnik continued to meet expectations in every category of his performance evaluation. Construing the facts in a light most favorable to the non-moving party, the inference

is that Gavurnik continued to work overtime during and after January 2014 without the accommodation. Therefore, for the purposes of this motion, Gavurnik was qualified to work as a service technician and has made out a prima facie case.

### ii. Legitimate Nondiscriminatory Reason and Pretext

The defendant's burden of producing a legitimate, nondiscriminatory reason is "relatively light" and the proffered reasons do not have to be the actual cause of the negative employment action. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Once the employer has proffered a legitimate reason for the adverse employment decision, the plaintiff must point to evidence that either: (1) casts doubt on the employer's "articulated legitimate reasons" or (2) demonstrates that "an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764.

In order to cast doubt on the employer's reasons, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* Courts should not inquire into whether the employer's decision was "wise, shrewd, prudent, or competent." *Id.* This prong focuses on the articulated reasons themselves, as opposed to the employer's conduct with regard to other employees.

A plaintiff can also demonstrate pretext by pointing "to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the employment decision." *Simpson v. Kay Jewelers*, 142 F.3d 639, 644–45 (3d Cir. 1998) (citing *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1111 (3d Cir. 1997)). Examples of such evidence include "showing that the employer has previously discriminated against the plaintiff, that the employer has discriminated against members of the

8

plaintiff's protected class or another protected class, or that similarly situated people *not within plaintiff's class* were treated more favorably." *Peake v. Pa. State Police*, 644 F. App'x 148, 153 (3d Cir. 2016) (emphasis added).

Home Properties points to the series of complaints directed at Gavurnik's work performance as the reasons for his termination. These constitute legitimate, non-discriminatory reasons for termination.

Gavurnik attempts to cast doubt on the disciplinary measures by claiming that the incidents were not individually sufficient to terminate him. This is the wrong inquiry. Because courts do not judge the prudence of an employer's business decision, the degree of an infraction and whether it rises to a level that justifies terminating an employee is irrelevant. Gavurnik points to no evidence that the articulated reasons were, for instance, mutually exclusive or incoherent. Without evidence of inconsistencies of Home Properties's proffered reasons, Gavurnik fails to undermine Home Properties's rationale.

Nor can Gavurnik point to evidence that age was the motivating factor in Home Properties's decision to fire him. Gavurnik identifies fellow service technicians Gil Rivera and George Livingwood as two similarly situated employees that were involved in two incidents with Gavurnik yet were not disciplined. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. 7–9.) Rivera and Livingwood, however, were 45 and 46, respectively. (Def.'s Statement of Undisputed Facts Ex. 30.) Because both of the comparators Gavurnik identifies were also in the protected class, Gavurnik cannot meet his burden. In fact, the only service technician not in the protected class while Gavurnik was employed by Home Properties was Kiran Clarey, but Gavurnik points to no evidence that Clarey was treated differently. (*Id.*) Therefore, Gavurnik cannot make out a claim for discrimination under the ADEA.

### 2. ADA

In order to establish a prima facie case for disability discrimination under the ADA, the plaintiff must show: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Taylor v. Phoenixville Sch. Distr.*, 184 F.3d 296, 306 (3d Cir. 1999).

#### i. Disabled

According to the ADA, "disability" means "a physical or mental impairment that substantially limits one or more major life activities," having "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" include walking and standing. § 12102(2)(A). "Substantially limits" "shall be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). The disability must "limit[] the ability of an individual to perform a major life activity as compared to most people in the general population." § 1630.2(j)(1)(ii).

Gavurnik is not disabled under the ADA. Gavurnik testified that he can walk "as a normal person can" and for more than an hour at a time. *See Palish v. K&K RX Servs., L.P.*, Civ. A. No. 13–4092, 2014 U.S. Dist. LEXIS 80606, at *22 (E.D. Pa. June 12, 2014) (underscoring the fact that the plaintiff testified that "he was able to do the amount of standing required by his position" in finding the plaintiff was not disabled). In addition, Gavurnik received "meets expectations" on his performance evaluations after a long winter requiring extended hours of snow removal. Simply because Gavurnik suffered from a series of conditions that may have affected his ability to walk and stand is not sufficient to qualify as a disability. Under the ADA,

10

the EEOC's interpretive guidelines expressly require a deficiency compared to the ability of members of the general population. § 1630.2(j)(1)(ii). Gavurnik's testimony and performance evaluations are the only evidence of Gavurnik's ability in relation to others and both demonstrate that his walking and standing are not substantially impaired. Because that evidence remains uncontroverted, Gavurnik is not disabled under the ADA.

### ii. "Regarded As"

Gavurnik also argues that Home Properties discriminated against him because it regarded him as disabled. *See* 42 U.S.C. § 12102(1)(C). Under this definition, the plaintiff need not actually have an impairment limiting a major life activity. § 12102(3)(A). The focus is on the employer's "reactions [to] and perceptions [of]" its employees. *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996). But "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." *Id.* Moreover, "[r]equiring an employee to 'submit a medical release and be cleared by [her] physician' is not evidence that an employer regards the employee as disabled." *Parker v. Port Auth.*, 90 F. App'x 600, 604 (3d Cir. 2004) (quoting *Somers v. City of Minneapolis*, 245 F.3d 782, 788 (8th Cir. 2001)).

The only evidence before the court that Home Properties could have regarded Gavurnik as disabled is Gavurnik's hospitalization for chest pains and the accompanying work release note request. Under *Kelly*, these two facts are not legally sufficient to maintain Gavurnik's claim because they only speak to an awareness of Gavurnik's hospitalization. Gavurnik himself dispels any further question by testifying that Home Properties employees did not make remarks about

his conditions. Therefore, Gavurnik is not regarded as disabled under the ADA and his ADA discrimination claim fails.

## B. Retaliation

In the absence of direct evidence of an adverse employment decision based on protected activity, retaliation claims revert to the *McDonnell Douglas* framework. *LaRochelle v. Wilmac Corp.*, Civ. A. No. 12–5567, 2016 U.S. Dist. LEXIS 133135, at *82 (E.D. Pa. Sept. 27, 2016). The prima facie case for retaliation under the ADEA and ADA are the same: Plaintiff must show "(1) [he] was engaged in protected activities; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Ptasznik*, 523 F. App'x at 160 (quoting *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 515–16 (3d Cir. 2004)); *see also LaRochelle*, 2016 U.S. Dist. LEXIS at *82. The second prong is not in dispute.

### 1. ADEA

Protected activities under the ADEA include "formal charges of discrimination as well as informal protests of discriminatory employment practices." *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (internal quotation marks omitted). Protected conduct does not, however, include mere complaints "about unfair treatment" that fail to reference "a protected characteristic as the basis for the unfair treatment." *Kier v. F. Lackland & Sons, LLC*, 72 F. Supp. 3d 597, 616 (E.D. Pa. 2014). Rather, the alleged discrimination must be regarding age, the characteristic protected by the ADEA. *Barber*, 68 F.3d at 702.

In order to satisfy prong one of an ADEA retaliation claim, Gavurnik's protected activity must reference age. Neither of Gavurnik's requests for accommodations referred to his age; they both concerned disability. Further, there is no evidence that Gavurnik's complaint to Delong

about snow blowers mentioned age in any way. Gavurnik did not engage in any protected activity under the ADEA and thus fails to make out a prima facie case.

### 2. ADA

The ADA states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act . . . ." 42 U.S.C. § 12203(a). Because the retaliation clause applies to "any individual," the plaintiff does not have to show that he is in fact disabled under the ADA. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997). The ADA protects the right to request an accommodation, even for individuals who are not disabled. *See Shellenberger v. Summit Bancorp*, 318 F.3d 183, 191 (3d Cir. 2003).

In order to satisfy the third prong of the prima facie case for retaliation under the ADA, plaintiff must show a "causal link" between the protected activity and the adverse employment decision. *LeBoon v. Lancaster Jewish Cmty. Cty. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007). Courts look to "a broad array of evidence" to determine causation, including "temporal proximity," "intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." *Id.* "[A] gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment." *Id.* at 233.

Even though the Court concluded that Gavurnik was not disabled under the ADA, Gavurnik is still afforded protection from retaliation under the ADA. It is undisputed that Gavurnik requested an accommodation to wear special shoes that alleviated some of his conditions, which constitutes protected activity. However, there is no causal nexus between the

13

protected activity and the termination decision. At least eight months elapsed between the accommodation request and Gavurnik's firing, significantly longer than the three months at issue in *LeBoon*. 503 F.3d at 233. There is also no other evidence in the record that suggests Gavurnik's termination was in retaliation for the requested accommodation. To the contrary: Gavurnik did not face any comments about his conditions from anyone at Home Properties, and Gavurnik's complaint to Delong was about snow blowers, not his conditions. Gavurnik testified that the complaint to Delong was the only basis for his retaliation claim. (Pl.'s Dep. 94.) Given there was no other protected activity in closer temporal proximity to his firing and no other evidence suggesting a causal nexus between the activity and the firing, Gavurnik's retaliation claim under the ADA fails to establish a prima facie case.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. An Order consistent with this Memorandum will be docketed separately.